

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

## No. 07-14-00360-CR
_____

### SHELLY BLAIR, APPELLANT

### V.

### THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2014-401,146; Honorable William R. Eichman II, Presiding

January 31, 2017

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Shelly Blair, was convicted by a jury of aggravated assault against a public servant[1] with an affirmative finding on use of a deadly weapon. The trial court[2] assessed punishment at fifty years confinement and Appellant perfected this appeal.

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(1) (West 2011). Aggravated assault is a second degree felony that is elevated to a first degree felony when committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. _Id._ at (b)(2)(B).

[2] Honorable Brad Underwood and Honorable Cecil Puryear (Ret.) sitting by assignment. TEX. GOV'T CODE ANN. § 75.002(a)(3) (West 2013).

By a single issue, Appellant contends the evidence is insufficient to establish her guilt. We affirm.

BACKGROUND

On January 10, 2014, narcotics officers with the Lubbock Police Department observed a gray vehicle, being driven by a white male, drive up to a warehouse that was under surveillance. The driver and a passenger, a white female ultimately identified as Appellant, exited the vehicle and went inside the warehouse. Once inside, the driver told his counterpart inside the warehouse, William Groesbeck, that undercover narcotics officers were outside, that he was going to leave, and that he was going to "run from the cops." The male and female occupants then returned to the gray vehicle and drove away. This information was conveyed by the surveillance officers to Officer Michael Matsik. Once behind the gray vehicle, Officer Matsik activated his emergency lights in order to perform a traffic stop. At that time, the gray vehicle began to speed away. A high-speed chase ensued. That chase ended when the driver of the gray vehicle crashed into Officer Matsik's vehicle and the driver fled on foot.

Officer Matsik began chasing the driver on foot, leaving the female passenger in the gray vehicle. The suspect ran through numerous backyards and wove his way through several alleys as he attempted to evade Officer Matsik. As the suspect and Officer Matsik exited an alley and turned onto a paved street, Officer Matsik observed a U.S. Mail letter carrier vehicle swerve to miss the fleeing male suspect. The driver of the letter carrier vehicle, Gary Davis, testified that he observed the suspect gray vehicle pull away from where it had stopped and start heading in his direction. He described the vehicle as "fishtailing" and approaching from the rear at a high rate of speed. When

Officer Matsik got into the street, he too observed the gray vehicle coming directly towards him. At the same time, Davis observed the gray vehicle pass his vehicle on the right-hand side, next to the curb, and strike Officer Matsik. After throwing Officer Matsik over the hood of the letter carrier vehicle and onto the ground, the gray vehicle sped away. As a result of the impact, Officer Matsik suffered severe injuries to his legs and head. Accident reconstruction officers later found no signs of braking or tire marks at the scene.

When investigating officers later located the suspect gray vehicle at an apartment complex, they found a driver's license inside issued to William Foster Hill. Hill was later found hiding inside the apartment of an elderly woman. He was arrested without further incident and booked into the Lubbock County Jail.

A separate investigation led officers to the detention of Natasha Sperling. Sperling identified Appellant as the driver of the gray vehicle that hit Officer Matsik. Sperling testified that, after the incident, Appellant fled to a house where she was staying and told her that she had just "fucked off a cop" who was trying to stop her and Hill. In what Sperling described as a "very calm" demeanor, Appellant described how "she got in the driver's seat and ran him over." Appellant was later apprehended at Sperling's residence. Mark Kilgore, a second person detained with Sperling, testified that Appellant assertively told him, "let's just say a cop had just got killed." Additionally, Groesbeck, owner of the warehouse and the man originally the subject of the undercover narcotics surveillance, testified that Appellant told him in a telephone conversation, "[w]e fucked off a cop." Appellant did not testify.

PROCEDURAL BACKGROUND

Appellant was indicted for the offense of aggravated assault of a public servant by the use or exhibition of a deadly weapon, to-wit: a motor vehicle. A jury trial commenced on September 29, 2014. At trial, Appellant entered a plea of "not guilty." At the conclusion of the guilt/innocence phase of trial, the jury found Appellant guilty as charged. Having elected to have the trial court assess punishment in the event of a conviction, the punishment hearing was conducted before the bench. After the presentation of further witness testimony, including evidence of Appellant's prior criminal record, the court sentenced her to fifty years confinement. Appellant filed a timely notice of appeal.

STANDARD OF REVIEW

To determine whether evidence is sufficient to support a conviction, a reviewing court views all the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This standard requires the reviewing court to apply a high degree of deference to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. A reviewing court determines whether the necessary inferences are reasonably based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, a reviewing court must

presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. *See Jackson*, 443 U.S. at 326.

"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). For purposes of our analysis of the offense charged in this case, we note that the essential elements of aggravated assault against a public servant are: (1) a person, (2) intentionally, knowingly, or recklessly, (3) causes bodily injury to an individual, (4) using or exhibiting a deadly weapon, and (5) knowing that individual to be a public servant who was lawfully discharging a public duty. *See* TEX. PENAL CODE ANN. § 22.02(a)(1), (b)(2) (West 2011). Here, the record reflects that the actual jury charge given was consistent with a hypothetically correct jury charge.[3]

ANALYSIS

Here, Appellant advances the argument that the collision between the vehicle being driven by her and the person of Officer Matsik was an accident. Specifically, she contends the evidence is insufficient to establish the necessary *mens rea* element of the offense, to-wit: intentional, knowing, or reckless conduct. In support of this contention,

---

[3] In addition to containing the essential elements of a hypothetically correct charge, the *Charge of the Court* also included two special charges, requested by Appellant, concerning the concepts of voluntary conduct and accident:

> You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission or possession. Conduct is not rendered involuntary because the person did not intend the results of his conduct.
> . . .

> If you believe from the evidence beyond a reasonable doubt that on the occasion in question the Defendant, Shelly Blair, did cause the injury of Michael Matsik by striking him with a motor vehicle, as alleged in the indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, the injury was a result of an accident and was not the voluntary act of conduct of the Defendant, you will acquit the Defendant and say by your verdict "not guilty."

Appellant points to evidence tending to show that she could not have known that Hill and Officer Matsik were in the alley and that they would have been running into the street at the very moment she was speeding by in her attempt to flee the area. Appellant points to the testimony of various eye witnesses to portray the image that events were transpiring rapidly, that she was surprised when Hill and Officer Matsik came out of the alley, and that, therefore, she could not have intentionally, knowingly, or recklessly assaulted Officer Matsik.

In the final analysis, Appellant's version of the events differs from the State's theory of the case in only one respect—the mental state of mind of Appellant. She contends that Officer Matsik's injuries were the result of an accident, while the State contends they were the result of intentional, knowing, or reckless conduct.

In determining something as cerebral as the mental state of mind of an accused, a jury is ultimately required to rely upon reasonable inferences drawn from direct and circumstantial evidence. In considering what inferences a jury may reasonably make from the evidence, both direct and circumstantial evidence may be equally probative regarding whether a defendant is guilty of the crime for which she is tried. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). Therefore, in reviewing the record, we treat direct and circumstantial evidence equally. *See Hooper*, 214 S.W.3d at 13 (recognizing that circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt).

Here, direct evidence supports the jury's verdict. Officer Matsik testified that he observed the gray vehicle being driven directly at him, while Davis testified that the vehicle passed his vehicle, at a high rate of speed, on the right-hand side, immediately

6

before striking Officer Matsik. Furthermore, in the context of the surrounding circumstances, a reasonable juror could have concluded that Appellant was the driver of the gray vehicle and that her actions were intentional. Appellant's statements and conduct after the incident also reasonably support that conclusion. Hill and Appellant were intentionally fleeing from the police, Hill was being pursued on foot by a law enforcement official, and Appellant wanted to prevent his capture. Appellant was operating a motor vehicle at a high rate of speed, in a residential neighborhood, and passing on the right-hand side of another vehicle. Additionally, she later acknowledged that she had run over a "cop" and that she suspected that he had been killed.

Here, the court's charge specifically advised the jury that they could consider whether the injuries sustained by Officer Matsik were the result of an accident rather than the intentional, knowing, or reckless conduct of Appellant. Deferring to the jury's determination of the credibility of the witnesses and the weight to be given their testimony, based on the cumulative force of all the evidence when viewed in the light most favorable to the verdict, and considering reasonable inferences to be drawn from that evidence, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Appellant's sole issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice

Do not publish.

7